**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AMBERWAVE SYSTEMS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION NO. 2-05CV-321** |
| ) | |
| v. ) | **JUDGE DAVIS** |
| ) | **JURY** |
| INTEL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MOTION TO TRANSFER

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Comes now, Defendant INTEL CORPORATION ("Intel" or "Defendant") by and through its attorneys of record to file its Motion to Transfer, and for its Motion would respectfully show to the Court the following:

Responding to threats levied by lawyers for AmberWave System Corporation ("AmberWave") that certain products manufactured by Intel infringe U.S. Patent No. 6,831,292 (the "'292 Patent"), on May 17, 2005 Intel filed suit in Delaware, the state in which AmberWave chose to incorporate, seeking declaratory relief that Intel's products do not infringe the '292 Patent ("First-Filed Action"). Delaware is also Intel's state of incorporation. Nearly two months later, on July 15, 2005, AmberWave unearthed another patent from its portfolio – U.S. Patent No. 6,881,632 (the "'632 Patent") – relating to the same technology for creating global strain across the substrate disclosed in the '292 patent and sued Intel for patent infringement in this Court accusing the very same products at issue in the First-Filed Action in Delaware ("Second-Filed Action"). Before filing the Second-Filed Action, AmberWave never suggested to Intel that Intel's products infringed the '632 Patent, despite having held several meetings with Intel at

which it made threats with respect to *other* issued or pending patents.

For the reasons discussed in detail below, the first-to-file rule requires the transfer of this case to Delaware. This action involves the same parties as the action filed almost two months earlier in Delaware, the same accused devices, and the same underlying technology. Because it is likely that this action will overlap substantially with the Delaware action – and because there are no compelling circumstances that require a contrary result – Intel respectfully submits that the first-to-file rule dictates that this case be transferred to the Delaware court for a determination of whether the most efficient course is to stay, consolidate or dismiss the case.

## FACTUAL BACKGROUND

On May 9, 2005, following a series of meetings over several months, counsel for AmberWave delivered a letter to Paul Otellini, then President and Chief Operating Officer (now Chief Executive Officer) of Intel, alleging that Intel's 90 nanometer Dothan and Prescott microprocessors infringe the '292 Patent and two patent applications now before the PTO, all of which are assigned to AmberWave. *See* Request for Judicial Notice ("RJN"), Ex. A (the "Cease-and-Desist Letter"). In the Cease-and-Desist Letter, AmberWave's counsel threatened that Intel must take "immediate steps to conclude license negotiations with AmberWave or to cease infringement of AmberWave's intellectual property." *Id.*

On May 17, 2005, Intel commenced an action in Federal District Court in Delaware seeking a declaration that Intel has not infringed and does not infringe the '292 Patent (the "First-Filed Action"). *See* RJN, Ex. A. AmberWave, which is a Delaware corporation, did not challenge the propriety of Intel's decision to seek declaratory relief in the face of AmberWave's threats. Indeed, AmberWave answered Intel's complaint on July 15, 2005 and asserted a counterclaim in Delaware alleging that Intel has infringed the '292 Patent. *See* RJN, Ex. B.

AmberWave has since propounded voluminous discovery requests on Intel in the First-Filed Action. *See* Declaration of Michael E. Jones ("Jones Decl.") at ¶¶ 4-5, Exs. A-B.

The same day that AmberWave filed its answer in the First-Filed Action – almost two months after Intel initially filed suit – AmberWave filed an action in this Court (the "Second-Filed Action") alleging that Intel's 90 nanometer microprocessors, the very same products at issue in the First-Filed Action, infringe another patent assigned to AmberWave, the '632 Patent. Compl. at ¶ 11.

**Commonalities Between the Two Actions**

These two actions share significant commonalities. First, the parties in both actions are the same. Intel and AmberWave are the *only* parties involved in the two actions and there is no reason to believe at this time that either case will require the joinder of parties.

Second, the cases involve the same products. In the Second-Filed Action, AmberWave alleges that Intel's "90 nm Pentium® Processors" directly or contributorily infringe the '632 Patent. Compl. at ¶ 11. The products at issue in the First-Filed Action – Intel's Dothan and Prescott processors — are also "90 nm" processors.[1] *See* Jones Decl. at ¶¶ 6-7, Exs. E-D. In fact, the Dothan and Prescott processors are the *only* 90 nanometer processors that Intel makes. *Id.* Consequently, the Dothan and Prescott products at issue in Delaware are the *exact same products* AmberWave identifies in the Second-Filed Action as the allegedly infringing "90 nm Pentium® Processors." Compl. at ¶ 11.

Finally, each case involves the same underlying technology. For decades researchers and manufacturers have investigated the advantages of "straining" silicon to increase the speed with which electrical current passes through the conductive material in integrated circuits built on a

---

[1]   The term "90 nm" refers to the width of the gate of the transistors in the Dothan and Prescott chips – 90 nanometers or 90 billionths of a meter.

semiconductor "substrate."  Jones Decl. at ¶ 8, Ex. E (Peter Weiss, *Straining for Speed*, SCIENCE NEWS, Feb. 28, 2004 at 136).  Both the '292 and '632 Patents purport to teach methods for improving the performance of integrated circuits placed in a "strained layer" of silicon over a substrate.  *Compare, e.g.,* '292 Patent at col. 3, lns. 26-28 ("The invention features a semiconductor structure where at least one strained layer is disposed on a semiconductor substrate . . . ."); '632 Patent at col. 2, lns. 28-36 ("the performance of a silicon CMOS inverter" is enhanced "through strained-silicon epitaxy on an engineered SiGe/Si substrate").

More specifically, both patents purport to teach (i) the growing of "graded layers" of the compound silicon-germanium ("SiGe") using increasing concentrations of germanium ("Ge"), (ii) the depositing of a "relaxed layer" of SiGe (with a constant Ge concentration) over the graded layers, and (iii) the depositing of a "strained layer" of silicon over the relaxed SiGe layer. *See, e.g.,* '292 Patent at col. 1, lns. 43-58; '632 Patent at col. 9, lns. 21-34.  Thus, in both patents a strained layer of silicon is deposited on a multilayer substrate composed of SiGe and silicon. Both patents also teach that the "substrate" and the "strained layer" are separate and distinct. *See, e.g.,* '292 Patent at col. 3, lns 64-64 ("The strained channel layer has a distal zone *away* from the substrate.") (emphasis added); '632 Patent at col. 3, lns. 62- col. 4, lns. 9 (describing Fig. 1, which shows "Si substrate," marked as element 104, as separate and apart from "Si film . . . under biaxial tension," marked as element 108).

Because the '292 Patent and the '632 Patent describe the same technology, the claims of the patents include common terms – *e.g.* "substrate" and "strained layer."  *See* '292 Patent at col. 10, ln. 4; '632 Patent at col. 10, lns. 55-56.  Indeed, AmberWave has acknowledged the significant overlap in the subject matter of the '292 and '632 Patents, having brought several of

the same "prior art" references to the attention of the USPTO examiners during the prosecutions of the patents.[2]

## ARGUMENT

### I. FEDERAL CIRCUIT LAW IS CONTROLLING

Because AmberWave's claim for patent infringement arises under the patent laws, this Court's jurisdiction is premised in part on 28 U.S.C. § 1338(a). Therefore the United States Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction under 28 U.S.C. § 1295. The Federal Circuit regards the application of the first-to-file rule as an issue that "is important to national uniformity in patent practice." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds*, *Wilton v. Seven Falls, Inc.,* 515 U.S. 277 (1995). Accordingly, Federal Circuit law governs the application of the first-to-file rule in this case. *Id.* (rejecting Seventh Circuit standard and announcing rule for patent cases); *see also Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005) (following *Genentech* and reviewing application of first-to-file rule).[3]

### II. THE FIRST-TO-FILE RULE COMPELS THE TRANSFER OF THIS CASE

In patent cases, "the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require

---

[2] Both patents cite U.S. Patent No. 6,059,895; U.S. Patent No. 6,111,267; U.S. Patent No. 6,350,993; and U.S. Patent No. 6,429,061. Both patents also cite the following articles: Fitzgerald et al., *Relaxed $Ge_xSi_{1-x}$ Structures for III-IV integration with Si and high mobility two-dimensional electron gases in Si*, Journal of Vacuum Science Technology, B 10(4), 1807-1819 (Jul./Aug. 1992); Yeo et al., *Nanoscale Ultra-Thin-Body Silicon-on-Insulator P-MOSFET with SiGe/Si Heterostructure Channel*, IEEE Electron Device Letters, vol. 21, No. 4, 161-163 (Apr. 2000).

[3] The Federal Circuit has not had occasion to address every aspect of the rule's application. To the extent there is no relevant authority from the Federal Circuit, Intel has cited in this motion authority from courts within the Fifth Circuit.

otherwise." *Genentech*, 998 F.2d at 937; *accord Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."). Application of the rule requires a three-part analysis by the court in a later-filed action:

1. As a threshold matter, the court must confirm that the case before it was filed later than an earlier case in another district. *Genentech*, 998 F.2d at 937; *accord Syntek*, 121 F.3d at 950-51.

2. The court must then determine whether the earlier-filed case is likely to raise issues that substantially overlap with the case on its own docket. *Syntek*, 121 F.3d at 950-51.

3. If so, the court *must* transfer the action before it to the first-filed court unless it finds that it would be "unjust or inefficient" to do so. *Genentech*, 998 F.2d at 938; *accord Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) (transfer required absent "compelling" reasons to favor later action).

After the second case is transferred, it is the responsibility of the first-filed court to decide whether that later action "must be dismissed, stayed, or transferred and consolidated." *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). In requiring transfer of related cases, the rule is designed to avoid the waste and duplication that would result from piecemeal resolution of similar issues. *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985).

### 1. **The Delaware Action is the First-Filed Action**

The Second-Filed Action was not commenced until July 15, 2005, almost two full months after Intel filed suit against AmberWave in Delaware. As the later-filed case, this action

must be transferred to the District of Delaware if this Court finds that it is likely to overlap substantially with the First-Filed Action. *Mann*, 439 F.2d at 407.

> 2. **Transfer is Required Because There are Identical Parties, Identical Accused Products, and a Substantial Overlap in the Subject Matter of the Patents at Issue**

The "substantial overlap" test does not require a strict identity of subject matter. "[R]egardless of whether or not the suits . . . are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues." *Mann*, 439 F.2d at 408 n.6. *See also Syntek*, 121 F.3d at 950 ("The rule does not, however, require that cases be identical."); *Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co., Inc.*, Civil Action No. SA: 04-CA-864-XR, 2005 WL 357657 (W.D. Tex. Feb. 1, 2005) ("all that is required is that the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap"). In fact, a district court need not determine that the actions will *actually* involve substantial overlap in order to apply the rule; the mere *likelihood* of overlap is sufficient. *Mann*, 439 F.2d at 408.

In 1971, prior to the establishment of the Federal Circuit Court, the Fifth Circuit addressed the meaning of "substantial overlap" in the context of patent litigation.[4] In *Mann.*, Mann sued in the Southern District of New York seeking a declaratory judgment that a number of its products did not infringe a patent owned by Hortex. *Id.* at 405. After Mann commenced that action, Hortex sued the company in the Western District of Texas, alleging that in making the same products that were at issue in New York, Mann infringed a *different* patent owned by

---

[4] Intel is not aware of any Federal Circuit cases addressing the degree of overlap that is required to warrant application of the first-to-file rule. However, there is no reason to believe that the Federal Circuit would have reached a different result than the Fifth Circuit did in *Mann*. *See, e.g., Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1271 (Fed. Cir. 1991) (Newman, J., concurring) (citing *Mann* with approval for proposition that duplicative litigation is disfavored).

Hortex. *Id.* at 405-06. The Fifth Circuit acknowledged that these two cases involved distinct patents with unique claims. *Id.* at 407 n.3. It also recognized that, although the patents derived from the same application and had the same specifications, the validity of each would turn on different facts, since the Patent Office cited "completely different" prior art against them. *Id.* The court nonetheless held that the cases substantially overlapped and that transfer of the later-filed action was warranted. *Id.* at 407-08.

Here, as in *Mann*, the two relevant actions involve identical parties. Also, as in *Mann*, the exact same products are at issue. Because the accused devices are identical, the parties will likely take discovery and present time-consuming trial testimony on the same complex subjects, such as (i) the specifications of Intel's microprocessors, (ii) the processes Intel uses to manufacture its microprocessors, (iii) Intel's research and development concerning the use of "strained" silicon in its microprocessors and (iv) the alleged damages resulting from the sale of the same finished products. Indeed, AmberWave has *already* sought voluminous discovery in the First-Filed Action on the design, specifications, manufacturing processes, and sales of the very same "90 nm processors" that it has placed at issue here. *See* Jones Decl. at ¶ 4, Ex. A (Request Nos. 4-14, 34, 40-44, 82-92, 96-97, 99, 107.) Duplicating discovery and testimony on these subjects will likely result in precisely the kind of inconsistent factual findings that would "trench upon the authority of sister courts." *West Gulf*, 751 F.2d at 729.

Besides involving identical parties and the same complex products, the First-Filed Action and the Second-Filed Action both involve patents that purport to disclose the same method of creating channel layers of strained silicon in semiconductor devices. *See, e.g., Whistler Group v. PNI Corp.,* No. Civ.A.3:03-CV-1536-G, 2003 WL 22939214, at *5 (N.D. Tex. Dec. 5, 2003) (recognizing that "piecemeal litigation in the complex and technical area of patent and trademark

law is especially undesirable").

Moreover, both actions will require the construction of at least two of the same terms appearing in every claim of the two patents (*e.g.*, "substrate" and "strained layer"). *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 387 (1996) ("[Q]uestions of [patent] construction are questions of law for the judge not questions of fact for the jury."). Duplicating these tasks in two separate actions will create a significant risk of inconsistent and potentially conflicting constructions of the same claim terms.

Consequently, because the First-Filed Action and the Second-Filed Action share identical parties, identical products, and the same technology, the First-Filed Action and the Second-Filed Action will overlap substantially. *See Mann*, 439 F.2d at 407-08 (finding that transfer was warranted under first-to-file rule when cases involved identical acts of infringement, same parties, and similar patents); *Whistler Group,* 2003 WL 22939214, at *5 (holding that cases with same parties, similar products, and patents that related to the same general technology were substantially similar for transfer under 28 U.S.C. § 1404(a)). Litigating these cases separately would result in precisely the kind of wasteful duplication of time and effort that the first-to-file rule is designed to prevent. *West Gulf*, 751 F.2d at 729 ("The concern manifestly is to avoid the waste of duplication . . . and to avoid piecemeal resolution of issues that call for a uniform result."). As a result, the predicate for applying the first-to-file rule is satisfied.

### 3. There Are No Compelling Circumstances That Justify Disregarding the First-To-File Rule

Once a case is deemed substantially similar to an earlier-filed action, it *must* be transferred unless it would be "unjust or inefficient" to do so. *Genentech,* 998 F.2d at 938. In deciding whether justice and efficiency require disregarding the first-to-file rule, the Federal Circuit considers the following factors: (i) the convenience and availability of witnesses, (ii) the

absence of jurisdiction over all necessary parties, (iii) the possibility of consolidation with related litigation, and (iv) whether the first-filed case involves the real parties in interest. *Coyle*, 394 F.3d at 1347-48. Courts may also consider whether the first-filed action can be characterized as an instance of improper forum shopping. *Id.*[5] As set forth below, none of these considerations justifies disregarding the first-to-file rule in this case.

First, the convenience and availability of witnesses do not favor the Eastern District of Texas. Intel is not aware of any fact witnesses with relevant information located in Texas. *See* Jones Decl. at ¶ 3. It seems unlikely that AmberWave, which does not manufacture any products, and is incorporated in Delaware and headquartered in New Hampshire, would have a reason to call any fact witnesses who reside in Eastern Texas. Indeed, the '292 and '632 Patents identify each of their inventors as residing in either New Hampshire or Massachusetts. Intel has no reason to believe that a single fact witness is located in the state of Texas.

Second, there are no jurisdictional reasons to disregard the first-to-file rule. Not only is AmberWave a Delaware corporation, but it answered and counterclaimed in Delaware without asserting a defense based on a lack of personal jurisdiction or on the inconvenience of that forum. AmberWave has thereby recognized the first-filed court's personal jurisdiction and that it is an appropriate forum for resolving that dispute. *Golden v. Cox Furniture Mfg. Co., Inc.*, 683

---

[5] The Federal Circuit has made it clear that the "considerations affecting transfer . . . do not change simply because the first-filed action is a declaratory action." *Genentech*, 998 F.2d at 938. Accordingly, the declaratory nature of an earlier-filed action does *not* support disregarding the rule. *Id.* at 937-39 (holding that decision to favor later-filed infringement action over declaratory suit was an abuse of discretion); *Coyle*, 394 F.3d at 1347-38 (same). Intel anticipates that AmberWave will seek refuge in district court decisions that have failed to acknowledge this controlling Federal Circuit authority. *See, e.g., Cummins-Allison Corp. v. Glory Ltd.*, No. Civ. A. 2-03-CV-358TJ, 2004 WL 1635534, at * 4 (E.D. Tex. May 26, 2004) (erroneously holding that "[a]ctions for infringement traditionally take precedence over declaratory judgment actions, even when later-filed"). These errant holdings provide no shelter from the Federal Circuit precedent cited above.

F.2d 115, 118 (5th Cir. 1982) (party waives right to object to personal jurisdiction if it does not make motion under Rule 12 or assert defense in answer); *see also* Fed. R. Civ. P. 12(h)(1).

The third and fourth factors also provide no basis for declining this transfer request. Intel is not aware of any related litigations in the Eastern District of Texas with which the two actions at issue here could be consolidated. Similarly, there is no reason to believe at this time that there are any real parties in interest in the Second-Filed Action other than the named parties in the First-Filed Action: AmberWave as assignee of the patents relevant to both actions and Intel as the only manufacturer of the accused devices. *See Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081-83 (Fed. Cir. 1989) (noting that suit against manufacturer of accused device is preferred to action against customers because manufacturer is real party in interest).

Finally, AmberWave's likely argument – that Intel has engaged in "forum shopping" – cannot justify disregarding the first-to-file rule. As an initial matter, unlike AmberWave, Intel did not make a strategic decision to select a forum with no connection to the parties. Instead, Intel sought relief in the state in which *both parties* are incorporated. *See Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1082 (N.D. Cal. 1999) (company's decision to file declaratory suit in home state did not amount to forum shopping).

Moreover, it was proper for Intel to seek a prompt judicial declaration that AmberWave's threats were baseless. *See Genentech*, 998 F.2d at 938 (holding that declaratory action was brought properly after patentee accused plaintiff of infringement); *Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971, 979 (W.D. Tex. 2004) (declaratory action filed in response to allegation of infringement was not improperly anticipatory); *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 398 (5th Cir. 2003) ("Despite the fact that plaintiff might have predicted that there would be a related suit filed . . . (making the federal suit 'anticipatory'), without more

we cannot say that the declaratory plaintiff's action is an instance of forum shopping . . . .").

Finally, the Delaware Action was not filed in anticipation of an impending infringement suit. In fact, in the nearly three months since Intel filed that suit, AmberWave has not filed a separate action asserting infringement of the '292 Patent. To the contrary, AmberWave voluntarily opted to answer Intel's complaint and to assert a counterclaim – in Delaware – alleging that Intel has infringed the '292 Patent. Hence, Intel did not file suit in Delaware as part of the proverbial "race to the courthouse."[6]

Accordingly, there are no compelling circumstances in the Second-Filed Action that justify disregarding the first-to-file rule.

## CONCLUSION

For all the foregoing reasons, Intel respectfully submits that the Court should grant Intel's motion to transfer this case to the United States District Court for the District of Delaware.

---

[6] In any event, the Federal Circuit has made it clear that existence of forum shopping does not, by itself, justify favoring a second-filed action. *See, e.g., Coyle* (reversing district court because fact that declaratory suit "was designed to anticipate a later-filed complaint in another forum" did not establish compelling circumstance warranting departure from rule); *Serco Servs. Co., L.P. v. Kelley Co., Inc*, 51 F.3d 1037, 1039-40 (Fed. Cir. 1995) (finding that in patent cases less consideration should be given to issues of forum shopping and to the anticipatory nature of lawsuits because Federal Circuit hears all patent appeals). To the extent that district courts within the Fifth Circuit have reached contrary results, they are no longer good law. *See, e.g., Serv. Corp. Int'l v. Loewen Group, Inc.*, Civ. Action No. H-96-3269, 1996 WL 756808, at *2 (S.D. Tex. Nov. 29, 1996) (erroneously holding that the anticipatory nature of an action is a compelling circumstance warranting departure from first-to-file rule).

Respectfully submitted,

POTTER MINTON,
A Professional Corporation


By    /s/ Michael E. Jones
    Michael E. Jones
    Attorney-In-Charge
    Texas Bar No. 10929400
    mikejones@potterminton.com

    110 North College
    500 Plaza Tower
    Tyler, Texas 75702
    Telephone: (903) 597-8311
    Facsimile: (903) 593-0846

    OF COUNSEL:

    George M. Newcombe (CA Bar No. 202898)
    gnewcombe@stblaw.com
    SIMPSON THACHER & BARTLETT LLP
    3330 Hillview Avenue
    Palo Alto, California 94304
    Telephone: (650) 251-5000
    Facsimile: (650) 251-5002

    Attorneys for Defendant Intel Corporation

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 2, 2005. Any other counsel of record will be served by facsimile transmission and first class mail.

        /s/ Michael E. Jones
        Attorney In Charge for Defendant
        Intel Corporation

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Defendant Intel Corporation has met and conferred with counsel for Plaintiff AmberWave Systems Corporation in good faith concerning the relief sought in the Motion, and that Plaintiff opposes the Motion.

        /s/ Michael E. Jones
        Attorney In Charge for Defendant
        Intel Corporation